**In the United States District Court
District of South Carolina
Greenville Division**

| | |
|---|---|
| **Anita Brock,**                               ) | |
| ) | |
|        **Plaintiff,**     ) | |
|   v.                                            ) | **Complaint** 6:16-CV-1223-MGL-BM |
| ) | |
| **New Ark Investment, Inc. f/k/a Ark**     ) | **Jury Trial Demanded** |
| **Holding Company, Inc., Covenant**       ) | |
| **Dove, LLC, and Alpha Health and**       ) | |
| **Rehab of Greer,**                              ) | |
| ) | |
|        **Defendants.**  ) | |

Plaintiff, through her attorney, would respectfully show unto this Court as follows:

1. Plaintiff is a South Carolina resident.

2. New Ark Investment, Inc. f/k/a Ark Holding Company, Inc. is a Delaware corporation that owns and operates nursing homes throughout the country.

3. In 2007, Ark Holding Company, Inc. acquired another holding company known as Covenant Dove Holding Company, LLC, which owns and or controls Defendant Covenant Dove, LLC ("Covenant Dove").

4. Covenant Dove, LLC holds itself out as the manager and provider of administrative support for a number of nursing homes and other facilities, including Alpha Health & Rehab of Greer. http://www.covenantdove.com/locations-by-state.php?state=SC

5. In January, 2014, Defendants hired Plaintiff as a Staff Development Coordinator for the Alpha Health & Rehab facility in Greenville County.

6. According to the position description Defendants have posted repeatedly on their website, the Staff Development Coordinator duties are summarized as follows:

> The Staff Development Coordinator (SDC) position is responsible for assessing, planning, implementing and evaluating an organized program for staff education according to dependent and independent nursing functions, conformance with recognized nursing techniques, and established standards based on the federal, state and local requirements and Covenant Dove policies

1

and procedures.[1]

7. The position description sets forth, at length, the "tasks" performed by Staff Development Coordinators as being:

> Responsible for assessing, planning, implementing and evaluating an organized program for staff education as illustrated by the following:
>
>> Assists with the orientation process in the facility through general, licensed and non-licensed orientation programs.
>>
>> Responsible for administering compliance training and education in order for personnel for perform their job responsibilities in accordance with federal, state and local standards as well as Covenant Dove Code of Conduct.
>>
>> Supervises the training and care provided by nursing assistants, licensed vocational/practical nurses and others for who they are administratively or professionally responsible.
>>
>> Plans, organizes, and implements education training programs to meet the strategic goals of the center.
>>
>> Utilize systems available in ongoing education and training programs such as orientation in-service and career ladder programs.
>>
>> Ensures that employee attendance at in-services and other training programs is tracked and that education is offered to meet certification and regular requirements.
>>
>> Conducts or coordinates certification or training programs for Nursing Assistants to prepare them for state certification/competency exam as applicable.
>>
>> Participates in the recruitment and selection of nursing personnel and ensures sufficient staff is hired.
>>
>> Conducts interviews and makes recommendations for new hires.
>>
>> Assist in the orientation/training of new employees.

---

[1] http://newton.newtonsoftware.com/career/JobIntroduction.action?clientId=8a3218144d086a4d014d97c801f45e0e&id=8a788247538d0dc401538f7396833452&source=

2

Plans, assigns and directs work of trainees.

Evaluates work performance of nursing personnel with the understanding that such evaluations impact tenure of probationary employees and wage increases on non-probationary employees.

Conducts needs assessment through review of survey history, individual performance and competency evaluation, center performance improvement trends, input from center department managers, and input from individual staff members, to identify educational needs to staff.

Provides and/or assists employees to identify available resources to achieve continuing education requirements if applicable.

Ensures the educational curriculum in the center meets or exceeds state, federal and accreditation requirements. Develops and maintains monthly and annual education calendars.

Monitors and tracks the employee TB Testing along with HR personnel.

Ensure proper retention of employee health records in accordance with applicable laws and regulations.

Documents resident status on Monthly Summaries, nurses notes and other reports as needed.

Participates in the development and educating staff on resident plan of care.

Investigate/document accidents and incidents.

Participates in staff meeting and gives in-services as required.

Monitors training supplies and reports inventory to DNS in accordance with the departmental budget.

Take direction and initiate actions cross/additional training) that will allow the assumption of cross-functional duties to ensure seamless patient care.

Demonstrate flexibility to perform duties wherever volume deems it necessary within the facility.

> Performs all job responsibilities in accordance with prescribed safety and infection control procedures, including thorough hand washing, use of disposable gloves where indicated and proper disposal of soiled materials.

8. The position description also sets forth the educational and experiential requirements of the position:

> Graduate of an accredited school of nursing.
>
> Current registration with the state Board of Nursing and licensed as a practical or registered nurse.
>
> Registered Nurse with 1-3 years of management or supervisor experience in long term care or geriatric nursing.
>
> Demonstrated track record of successful leadership, management, and teaching skills.
>
> Certified to teach the nursing assistant training classes preferred.
>
> Prior SDC experience preferred.
>
> Maintain CPR certification.

9. Finally, the position description delineates the skills necessary to perform the duties of the position at issue:

> Ability to functions independently in a multi-task environment, as well as part of a team.
>
> Ability to follow the appropriate safety precautions.
>
> Effective verbal and written communication with all levels of management and employees.

10. In or about 2010, Plaintiff was involved in a serious car accident. As a result of the accident, Plaintiff has a serious disability related to her back that, untreated, substantially limits one or more major life activities such as lifting, walking, sleeping, performing manual tasks, etc. both as direct result of the underlying injury itself as well as the pain associated with it.

11. In or about 2012, her physicians installed a spinal cord stimulator to treat the back pain associated with the underlying disability.

12. Notwithstanding Plaintiff's disability and with the treatment she had been receiving, she was able to perform the essential functions of the staff development coordinator position without any additional accommodations.

13. In April, 2014, Plaintiff required surgery because of a malfunction of her spinal

4

cord stimulator.

14. Defendants' human resource representative provided Plaintiff an indefinite personal leave of absence so Plaintiff could have the necessary surgery and recuperation time.

15. Plaintiff had the spinal cord stimulation repair surgery on or about April 18.

16. At no point did Defendants treat Plaintiff's absence from work as an absenteeism issue.

17. On or about April 29, Plaintiff provided Defendants with a return to work authorization that cleared her to return to work with certain restrictions on May 7, 2014. Those restrictions were put were for 12 days only, after which Plaintiff was under no restrictions.

18. The temporary restrictions imposed (May 7-9) would not have prevented Plaintiff from performing the essential functions of the staff development coordinator position. As noted above in paragraphs 7-9, Defendants' own description of the position at issue establishes that the essential functions do not involve any degree of strenuous manual labor. To the extent tangential tasks might have been beyond Plaintiff's temporary restrictions, they could easily have been addressed. Defendants, however, simply precluded the consideration of any restrictions whatsoever.

19. Defendants' representatives said they would have to check with the corporate office because they were not sure there was "light duty" available.

20. On or about May 5, 2014, rather than either agreeing to reinstate Plaintiff on May 7, or to at least engage in the requisite interactive process to determine whether an accommodation was necessary, Defendants' assistant director of nursing (ADON) told Plaintiff she could not return to work until she was able to work without any restrictions.

21. As noted above, under the doctor orders presented on or about April 29, all restrictions were lifted as of May 19, 2014.

22. Accordingly, the parties understood that Plaintiff would return to work as of May 19, and Defendants continued the personal leave granted to her.

23. On or about May 12, Plaintiff informed Defendants that she was meeting with her physicians on May 15 to confirm her return to work with no restrictions as of May 19. During this conversation, the parties agreed that Plaintiff would report to the office on May 16 and bring her paperwork releasing her to return to work with no restrictions effective May 19.

24. On May 15, Plaintiff met with her doctor and, as anticipated, procured another note confirming that she was released to return to work with no restriction as of

5

May 19.

25. On May 16, Plaintiff reported to the office at her place of employment and presented the doctors note as previously arranged on May 12. Plaintiff provided Defendants with the second note, confirming she could return to work the next working day with no restrictions.

26. During that meeting, Defendants' ADON told Plaintiff that she needed to wait while the ADON spoke to the facility administrator, Edward Burton. When the ADON returned, she told Plaintiff that her employment was terminated because Defendants did not feel Plaintiff could perform her job as a result of her disability. The ADON added that Burton had said Defendants needed someone they could depend on because of an upcoming DHEC audit.

27. Upon information and belief, Defendants had already hired a staff development coordinator for the facility.

28. Subsequent to her termination, Plaintiff applied for staff nurse positions. Although the positions were still advertised, Defendants told Plaintiff the positions were filled.

29. Although Defendants have remained aware of Plaintiff's desire for employment and of her excellent credentials, they have continued to advertise openings and have refused to consider or offer Plaintiff employment.

30. Defendants' actions have been willful and done with reckless disregard for the rights of Plaintiff.

### Count I
### For A First Cause of Action
### ADA Discrimination – Termination of Employment

31. Plaintiff incorporates the foregoing allegations as if set forth here in full.

32. Defendants have maintained one or more policies and practices that violate the ADA, including an unlawful policy or practice of refusing to employ or reinstate any person with any restrictions whatsoever.

33. Defendants have discriminated against Plaintiff because of her disability and/or Defendant's perception of Plaintiff's conditions and/or Plaintiff's record of impairments.

34. Defendants refused to engage in the requisite interactive process, to consider, or to provide any reasonable accommodation that Defendants could reasonably believe to be necessary to permit Plaintiff to perform the essential functions of the position she occupied.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claim of

disability discrimination in violation of the Americans With Disabilities Act and that she be granted all available relief including, but not limited to:

- (a). A declaratory judgment that the acts and practices of the Defendant complained of herein are in violation of the laws of the United States;

- (b). Injunctive relief, including reinstatement.

- (c). Actual, compensatory, and punitive damages;

- (d). Attorney fees, expenses, costs, and interest; and

- (e). All other and further relief as to this Court appears necessary and proper including, but not limited to, equitable relief to compensate Plaintiff.

### Count II
### For A Second Cause of Action
### ADA Discrimination – Refusal to Hire

35. Plaintiff incorporates the foregoing allegations as if set forth here in full.

36. Defendants have refused to consider or hire Plaintiff for positions for which she was qualified and that were advertised.

37. Defendants had no basis to refuse Plaintiff employment other than their previously-disclosed belief that her disability prevented her from performing her job and made her unreliable.

38. Again, to the extent Defendants regarded Plaintiff's condition as limiting her ability to perform the essential functions of the position for which she applied, Defendants again refused to engage in the requisite interactive process, to consider, or to provide any reasonable accommodation that Defendants could reasonably believe to be necessary to permit Plaintiff to perform the essential functions of the position.

WHEREFORE, Plaintiff respectfully requests a trial by jury on her claim of disability discrimination in violation of the Americans With Disabilities Act and that she be granted all available relief including, but not limited to:

- (a). A declaratory judgment that the acts and practices of the Defendant complained of herein are in violation of the laws of the United States;

- (b). Injunctive relief, including reinstatement.

- (c). Actual, compensatory, and punitive damages;

- (d). Attorney fees, expenses, costs, and interest; and

    (e).    All other and further relief as to this Court appears necessary and proper including, but not limited to, equitable relief to compensate Plaintiff.

Respectfully submitted this 20th day of April, 2016

    _s/ Brian P. Murphy_____
    Brian P. Murphy, Bar No. 6405
    Attorney for Plaintiff

Stephenson & Murphy, LLC
207 Whitsett Street
Greenville, SC 29601
Phone: (864) 370-9400
Fax:   (864) 240-9292